**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SOLAREDGE TECHNOLOGIES LTD.<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA<br><br>Defendants. | Court No. 26-cv-04957 |

# COMPLAINT

1. Plaintiff, SolarEdge Technologies Ltd. ("Plaintiff"), is an Israeli-based importer of merchandise that was subjected to the challenged duties in this complaint. Like challenges raised by others, Plaintiff brings this action to (a) challenge the legality of the tariffs imposed since February 2025 pursuant to the International Emergency Economic Powers Act ("IEEPA"), and (b) obtain refunds of duties Plaintiff already paid pursuant to such tariff actions.

2. Starting in February 2025, the President of the United States signed a series of executive orders invoking IEEPA as the basis for imposing broad new tariffs ("IEEPA duties") on goods entering the United States from nearly every country, including countries from which Plaintiff sources its imports. As an importer of record, Plaintiff is responsible for paying IEEPA duties on goods it imports into the United States and is the proper party to seek a refund of illegally-imposed IEEPA tariffs.

3. On February 20, 2026, the U.S. Supreme Court struck down the IEEPA tariffs, holding that "IEEPA does not authorize the President to impose tariffs." *Learning*

*Resources, Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)). This Court had previously so held. *See V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d. 1350, 1365-67 (Ct. Int'l Trade 2025), *aff'd in part, vacated in part, remanded sub nom. V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, 222 L. Ed. 2d 1231 (Sept. 9, 2025).

4. Consistent with the decision of the Supreme Court, Plaintiff seeks an order that the IEEPA duties imposed by Defendants under these executive orders are unlawful, and granting a refund of the IEEPA duties Plaintiff has already paid.

**PARTIES**

5. Plaintiff, SolarEdge Technologies Ltd., is an Israeli company.

6. Defendant United States Customs and Border Protection ("CBP") is a component agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and collecting tariffs or duties and taxes on goods imported into the United States.

7. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

8. Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9. Defendants are referred to collectively in this complaint as "CBP".

**JURISDICTION**

10. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources*, slip op. at 5, n.1; *see also V.O.S. Selections*, 149 F.4th at 1327-30.

11. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

12. Plaintiff has standing to bring this lawsuit because it is the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA duties as implemented and collected by CBP. As a result of the executive orders challenged by this lawsuit, Plaintiff has paid IEEPA duties to the United States and thus has suffered injury caused by those orders.

## BACKGROUND

### I. President Trump Orders a Series of Tariffs, Invoking IEEPA

#### A. The IEEPA Duties

13. On February 1, 2025, President Trump issued three executive orders imposing tariffs on products of Canada, Mexico, and China. Each executive order invoked IEEPA as the statutory basis for authorizing the tariffs. For each set of tariffs, the President claimed that the tariffs were justified under IEEPA because of a purported national emergency related to risks arising from alleged trafficking of illegal drugs into the United States and/or risks arising from illegal immigration.

14. Executive Order 14194, 90 Fed. Reg. 9,117, *Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"),[1] imposed an additional 25 percent

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 1, 2025).

tariff on imports from Mexico, with certain exceptions. The order justified the use of emergency powers based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id.*

15. Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border* ("Canada Tariff Order"),[2] similarly declared an emergency related to opioid trafficking and imposed 10 percent and 25 percent tariffs on imports from Canada, with certain exceptions.

16. Finally, Executive Order 14195, 90 Fed. Reg. 9,121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order"),[3] also declared an emergency because of opioid trafficking, asserting that "the sustained influx of synthetic opioids" constituted a national emergency and that "[m]any PRC-based chemical companies also go to great lengths to evade law enforcement and hide illicit substances in the flow of legitimate commerce." The China Tariff Order imposed an additional 10 percent *ad valorem* tariff on products of China, with certain exceptions and on top of existing duties.[4] Collectively, the Mexico Tariff Order, the Canada Tariff Order, and the China Tariff Order are referred to herein as the "Trafficking Tariff Orders," and the tariffs thereunder are referred to

[2] Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 1, 2025).

[3] Exec. Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 1, 2025).

[4] Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("February 5 Amendment"), which amended the treatment of *de minimis* articles but did not impact the tariff rates for other articles. Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,277 (Feb. 5, 2025).

herein as the "Trafficking Tariffs."

17. On March 3, 2025, the President amended the China Tariff Order through Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China* ("March 3 Amendment").[5] The March 3 Amendment raised the tariff rate on products of China from 10 percent to 20 percent and justified this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."

18. On April 2, 2025, citing trade deficits with U.S. trading partners as a separate national emergency, President Trump issued Executive Order 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[6] The Reciprocal Tariff Order imposed a 10 percent baseline tariff on nearly all imports to the United States, with certain exceptions, effective April 5, and additional "reciprocal" tariffs on 56 countries and the member states of the European Union, effective April 9.[7] These higher country-specific tariffs range from 11 percent to 50 percent. *Id*.

19. The Reciprocal Tariff Order asserts that "U.S. trading partners' economic policies . . . suppress domestic wages and consumption, as indicated by large and persistent annual U.S. goods trade deficits." *See* Reciprocal Tariff Order.

20. On April 8, 2025, the President responded to retaliatory tariffs from China by raising the reciprocal tariff rate on products of China from 34 to 84 percent. Exec. Order No.

---

[5] Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025).

[6] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025).

[7] *Id*. at Annex I.

14259, 90 Fed. Reg. 15,509*, Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*.[8]

21. The next day, the President signed Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*,[9] which suspended the higher country-specific "reciprocal" tariffs on all countries, except China, for 90 days. The same order raised the "reciprocal" tariff rate imposed on China-origin goods from 84 to 125 percent. *Id*. Meanwhile, the 20 percent Trafficking Tariff on products of China remained in place, such that many imports from China faced a combined tariff rate of 145 percent under IEEPA.

22. In implementing these executive orders, the Defendants directed modifications to the Harmonized Tariff Schedule of the United States ("HTSUS") so that merchandise subject to the new duties would be entered under new tariff codes.

23. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See* Complaint, *V.O.S. Selections*, *et al. v. Donald J. Trump*, *et al.*, No. 25-cv-00066 (Ct. Int'l Trade Apr. 14, 2025), ECF No. 2.

24. In the months since the *V.O.S. Selections* complaint was filed, the President has invoked IEEPA to issue additional executive orders imposing new tariffs and modifying others. On July 30, 2025, the President signed Executive Order 14323, *Addressing Threats to the United States by the Government of Brazil*,[10] which imposed an additional tariff of 40 percent on products of Brazil, with certain exceptions. The tariff was subsequently modified to exempt

---

[8] Exec. Order No. 14259, *Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15,509 (Apr. 8, 2025).

[9] Exec. Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 9, 2025).

[10] Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (July 30, 2025).

additional products. Exec. Order No. 14361, *Modifying the Scope of Tariffs on the Government of Brazil*, 90 Fed. Reg. 54,467 (Nov. 20, 2025). Furthermore, on August 6, 2025, the President signed Executive Order 14329, *Addressing Threats to the United States by the Government of the Russian Federation*,[11] imposing an additional tariff of 25 percent on products of India. This tariff was later terminated by executive order.

25. As explained by the Supreme Court, IEEPA does not authorize the President to impose tariffs. By this Complaint, Plaintiff seeks relief as a result of all duties it has paid or will pay to the United States (except to the extent that Plaintiff has already received refunds via the Consolidated Administration and Processing of Entries ("CAPE") portal) ("Challenged Tariff Orders").[12]

26. CBP continued to collect duties imposed by the Challenged Tariff Orders while the *V.O.S. Selections* litigation and related litigation remained pending, and announced, on February 22, 2026, that duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service

---

[11] Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 6, 2025).

[12] The Challenged Tariff Orders are the following executive orders and all amendments thereto:

- Executive Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 1, 2025);
- Executive Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 1. 2025);
- Executive Order No. 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 1, 2025);
- Executive Order No. 14257, *Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 2, 2025);
- Executive Order No. 14266, *Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg 15,625 (Apr. 9, 2025);
- Exec. Order No. 14323, *Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (July 30, 2025); and
- Exec. Order No. 14329, *Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 6, 2025).

Message # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026).

### B. Implementation of the Challenged Tariff Orders by Defendant CBP

27. CBP is charged with the assessment and collection of duties, including the Challenged Duties assessed pursuant to the Challenged Tariff Orders. *See* 19 U.S.C. §§ 1500, 1502.

28. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the HTSUS. Pub. L. No. 100–418, 102 Stat. 1107. CBP classifies merchandise imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

29. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

30. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010, 637 F. Supp. 2d 1218 (2009) ("The authority to modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 528 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

31. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods according to the rates established by the HTSUS, after

confirming the HTSUS classification of the goods. 19 U.S.C. §§ 1202, 1500, 1502.

## II. The Supreme Court Held That IEEPA Does Not Authorize Tariffs

32. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose the subject tariffs. None of these statutes authorizes the President to impose any tariffs.

33. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the Challenged Duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit. Sitting *en banc*, the Federal Circuit on August 29, 2025, affirmed this Court's decision that the Challenged Tariff Orders (and resulting Challenged Duties) are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, 222 L. Ed. 2d 1231 (Sept. 9, 2025).

34. In a different lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, 222 L. Ed. 2d 1231 (Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted *certiorari* in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated before the Supreme Court.

35. On February 20, 2026, the Supreme Court concluded that IEEPA provides no authority to impose tariffs. *See Learning Res., Inc. v. Trump*, No. 24-1287, slip op. at 20 (U.S. Feb. 20, 2026).

36. In a separate case, on March 4, 2026, Judge Eaton of the Court of International Trade found that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision," and ordered CBP to refund IEEPA duties paid on unliquidated entries and entries for which liquidation is not yet final. *See* Order at 1, *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-01259 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

**III. Plaintiff Paid Challenged Duties**

37. As of the date of this Complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders ("Challenged Duties").

38. In addition to other applicable HTSUS codes, Plaintiff's imports subject to the Challenged Tariff Orders entered the United States under newly created HTSUS codes within Chapter 99.

39. Plaintiff has paid the Challenged Duties on a continuous basis.

## STATEMENT OF CLAIMS

### COUNT I
### THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

40. Plaintiff incorporates by reference paragraphs 1-39 above.

41. In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA.

42. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate. . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's

decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.* at 21.

43. The Challenged Tariff Orders in this Complaint are the same as those struck down in *Learning Resources*. They rely exclusively on IEEPA as the basis for imposing the Challenged Duties and revising the HTSUS.

44. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (No. 25-1812).

45. This Court is bound by the *Learning Resources* decision, and as a result of that decision, should declare that the Challenged Tariff Orders (and resulting Challenged Duties) are unlawful as to Plaintiff and enjoin CBP from further collecting Challenged Duties from Plaintiff. The Court should also order CBP to refund all Challenged Duties collected from Plaintiff since their imposition, with interest as provided by law.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

(a) hold that the Challenged Tariff Orders are *ultra vires* and void *ab initio* because the President lacks the authority under IEEPA to impose tariffs;

(b) declare that the Challenged Tariff Orders are unlawful and void with respect to Plaintiff and enjoin Defendants from imposing and enforcing against Plaintiff any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

(c) enjoin Defendants from liquidating Plaintiff's entries upon which any Challenged

Duties were assessed but have not been refunded;

(d) order Defendants to reliquidate any entries that have been liquidated with the Challenged Duties assessed, so as to remove the unlawful tariffs;

(e) order Defendants to liquidate, without the Challenged Duties, all unliquidated entries that were previously subjected to the Challenged Duties, so as to remove the unlawful tariffs;

(f) order the United States to refund to Plaintiff the Challenged Duties collected on Plaintiff's entries, with interest as provided by law;

(g) award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action; and

(h) grant such further relief as this Court deems proper.

Dated: November 3, 2026

Respectfully submitted,

*/s/ Richard A. Mojica*

Richard A. Mojica
Adam Feinberg
MILLER & CHEVALIER CHARTERD
900 Sixteenth Street NW
Washington, D.C. 20006
Telephone: (202) 626-1571
Fax: (202) 626-5801
Email: rmojica@milchev.com
Email: afeinberg@milchev.com

*Counsel for Plaintiff*